IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERESA GAYLE HAZELWOOD | ) | |
| | ) | |
| v. | ) | No. 3:13-0563 |
| | ) | |
| NANCY A. BERRYHILL | ) | |
|     Acting Commissioner of | ) | |
|     Social Security[1] | ) | |

# M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 14), to which Defendant has responded (Docket Entry No. 20). Plaintiff has also filed a subsequent reply to Defendant's response (Docket Entry No. 22). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 23).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Under Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

# I. INTRODUCTION

Plaintiff filed applications for DIB and SSI on October 8, 2009. *See* Transcript of the Administrative Record (Docket Entry No. 10) at 81-82.[2] She alleged a disability onset date of June 15, 2009. AR 81-82. Plaintiff alleged that she was unable to work because of arthritis, back problems, a history of surgery on her neck and lower back, depression, and a suicide attempt. AR 99-100.[3]

Plaintiff's applications were denied initially and upon reconsideration. AR 81-84. Upon her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Scott C. Shimer on November 21, 2011. AR 37. On January 20, 2012, the ALJ denied the claim. AR 14-16. On April 8, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on January 20, 2012. AR 14-16. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[3] The Commissioner also found evidence of chronic obstructive pulmonary disease ("COPD") and osteopenia. AR 99-100.

2. The claimant has not engaged in substantial gainful activity since June 15, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical degenerative disc disease with fusion and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\*\*\*

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) and 416.967(b); except that she can occasionally reach overhead with the bilateral upper extremities; occasionally able to balance, bend, stoop, crouch, crawl and climb ramps and stairs; but never able to climb ladders, ropes or scaffolds. Additionally, the claimant is able to have occasional contact with the public.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7. The claimant was 49 years old on the alleged onset date, defined as a younger individual. The claimant is currently 52 years old, defined as closely approaching advanced age. (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education with one year of college, and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

\*\*\*

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 19-31.


## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A.  Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's

age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work.

*Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that

the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C.  The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a range of light work with other express limitations to account for her severe impairments, and that considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 19-31.

### D.  Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) failing to properly evaluate the treating physician's opinion; (2) mischaracterizing the evidence of record and not properly weighing the opinions of Plaintiff's mental health providers; and (3) failing to properly evaluate Plaintiff's credibility. DE 14-1 at 1-2. Plaintiff therefore requests that this case be reversed and benefits

awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id.* at 25.

> Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. The treating physician's opinion.**

Plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Richard Meyer, her treating physician. DE 14-1 at 12. Plaintiff asserts that the ALJ failed to consider his "fairly extensive treating relationship" with her. *Id.* at 14. Plaintiff also points to multiple "objective findings" in Dr. Meyer's office notes that she claims provide substantial support for Dr. Meyer's opinion that Plaintiff "should be considered disabled due to her condition." *Id.* at 13-14.

It is firmly established that a treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ determines that the treating physician's opinion is not entitled to

controlling weight, the ALJ must provide "good reasons" for the weight that is assigned to the opinion. *Id.*

The opinion of Dr. Meyer is contained in a letter from November 14, 2011, which states in part:

> [Plaintiff] suffers from severe chronic pain related to degenerative disease of her cervical and thoracic spine. In addition, she is showing neurological signs related to her cervical spine disease including hand weakness and numbness. It is my opinion that [Plaintiff] should be considered disabled related to this condition and that she should receive social security disability benefits as such.

AR 434. Despite this opinion, the Court emphasizes that the "ultimate determination of disability is a matter reserved to the Commissioner." *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008). It is therefore the Commissioner's role to make a determination as to whether a claimant is able to work despite any functional limitations stemming from an alleged medical condition. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ-not a physician-ultimately determines a claimant's RFC.") (citing 42 U.S.C. § 432(d)(5)(B)). Dr. Meyer's opinion that Plaintiff is disabled thus has little bearing on the ALJ's analysis. *See Christman v. Sec'y of Health & Human Servs.*, 9 F.3d 106 (6th Cir. 1993) ("The regulations indicate that 'a statement by your physician that you are *disabled* or *unable to work* does not mean that we will determine that you are disabled. [The Commissioner has] to review the medical findings and other evidence that support a physician's statement that you are disabled.'") (internal citation omitted) (emphasis in original).

Here, the ALJ reviewed the record and determined that Dr. Meyer's opinion was not consistent with the medical evidence contained therein. The ALJ specifically noted that Dr. Meyer's opinion regarding disability appeared to be inconsistent with his own office notes,

including his assertion that Plaintiff was demonstrating weakness and numbness in her hands even though he had not actually examined her hands at any point. AR 29. The ALJ also noted that Plaintiff was "consistently found [to be] neurologically intact" (AR 29), which contradicts Dr. Meyer's claim that Plaintiff was "showing neurological signs." AR 434.

Dr. Meyer correctly notes that Plaintiff has been diagnosed with degenerative disc disease, a finding that is supported by imaging studies from February of 2009. AR 378-79. However, Dr. Meyer provides no opinion as to any functional limitations allegedly caused by Plaintiff's condition, instead offering a conclusory opinion that Plaintiff "should be considered disabled" (AR 434), a statement that offers no insight regarding the severity of the condition. *See Carney v. Colvin*, No. 3:12-cv-0744, 2015 WL 5089783, at *8 (M.D. Tenn. Aug. 17, 2015) (affirming ALJ's decision to discount the opinion of a physician who provided only "a conclusory assertion that [the claimant] was unable to work" but "fail[ed] to give specifics as to what actual limitations were imposed on [the claimant's] functional ability"). In fact, Dr. Meyer's letter does not appear to represent a "medical opinion" under the relevant regulation:

> Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, *what you can still do despite impairment(s), and your physical or mental restrictions*.

20 C.F.R. § 404.1527(a)(2) (emphasis added).

It is undisputed that the MRI findings from February of 2009 reveal moderate central canal stenosis and moderate to severe foraminal stenosis at the T1-2 level, as well as "mild central canal and foraminal stenosis otherwise." AR 379. However, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (internal citation omitted). Dr. Meyer's letter

offers no opinion as to the functional limitations caused by Plaintiff's condition, thereby diminishing any value the letter may have lent to the ALJ's analysis. *See Coldiron*, 391 F. App'x at 441 ("[T]he ALJ is not bound by conclusory statements of doctors[.]").

As previously discussed, the ALJ discounted Dr. Meyer's opinion based on its inconsistency with office notes that failed to document any neurological symptoms relating to Plaintiff's hands, as well as the lack of consistent clinical findings other than tenderness of Plaintiff's thoracic spine. AR 28-29. Indeed, Plaintiff demonstrated a full range of motion, normal stability, and normal strength in her upper extremities approximately one year after the MRI. AR 362-63. Plaintiff similarly exhibited no symptoms in her upper and lower extremities on February 22, 2010. AR 358-59. A physical examination in July of 2011 revealed a normal gait and station, and no neurological findings. AR 409-10.

Moreover, as discussed by Defendant, the MRI on which Plaintiff relies as support for Dr. Meyer's opinion took place more than four months prior to the alleged onset of disability date. This fact does not by itself render the MRI findings immaterial,[4] and there is no indication that the ALJ dismissed the MRI on such grounds.[5] However, it is significant that the record contains additional evidence indicating that Plaintiff continued to demonstrate no functional or neurologic deficiencies well after the February 2009 MRI. Her muscle strength and tone were normal on July 21, 2009, with no evidence of numbness. AR 289. On September 28, 2009, Plaintiff denied back pain and showed normal strength, with no indication of upper extremity

---

[4] *See DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) ("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant[.]").

[5] The ALJ specifically discussed both the MRI findings and Dr. Meyer's reliance on these findings. AR 22-23.

weakness or significant decrease in her range of motion. AR 281-82. On December 23, 2009, Plaintiff reported that she "rarely or never [has] pain" (AR 273), and demonstrated normal muscle strength with no neurologic findings. AR 271. On February 2, 2010, exactly one year after the MRI, Plaintiff demonstrated a full range of motion in her elbows and wrist, normal handgrip, normal fine finger movement, normal finger extension, and normal motor strength in both the upper and lower extremities. AR 303.

Finally, the Court notes that in November of 2009, Plaintiff reported that her application for unemployment benefits had been denied. AR 247. The filing of an application for unemployment benefits further undermines Plaintiff's claim that her condition was disabling as of June 15, 2009, because,

> [a]pplications for unemployment and disability benefits are inherently inconsistent ... There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work.

*Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (internal citation and quotations omitted); *see also Villarreal v. Comm'r of Soc. Sec.*, No. 2:13-cv-15197, 2014 WL 6750327, at *7 (E.D. Mich. Nov. 30, 2014) ("[The claimant] applied for both jobs and unemployment benefits after his alleged onset date—representing that he was ready, willing, and able to work—which is obviously not consistent with his allegations of disabling pain."). Although the precise date of Plaintiff's application for unemployment benefits is unknown, the record indicates that Plaintiff continued to present herself as "ready and willing to work" through November of 2009, but was "unable to find a job due to losing her nursing license." AR 246. A note from September of 2009 indicates that Plaintiff "[h]ad a blast" working in the kitchen at the VA, and "[w]ould like a dif[ferent] job," but was concerned with finding a job that would "match

her pay grade." AR 395. Such evidence detracts from Plaintiff's credibility, as discussed in detail below, and suggests that Plaintiff's condition was not disabling as late as November of 2009, approximately nine months after the MRI findings were produced, and nearly five months after the alleged onset date.

Based on the foregoing, the Court finds that there is substantial evidence to support the ALJ's decision to discount Dr. Meyer's November 14, 2011 letter. The ALJ discussed the specific inconsistencies in Dr. Meyer's own clinical findings that undermined his opinion regarding Plaintiff's allegedly disabling condition (AR 24, 28-29), thereby providing "good reasons" for discounting the opinion in accordance with 20 C.F.R. § 404.1527(c)(2). Dr. Meyer's letter fails to discuss any functional limitations allegedly caused by Plaintiff's condition, and numerous records indicate that Plaintiff did not suffer any functional or neurological deficits despite the degenerative disc disease and accompanying stenosis revealed in the MRI from February of 2009. The Court therefore rejects this assertion of error.

**2. The opinion of Plaintiff's mental health providers.**

Plaintiff next accuses the ALJ of misrepresenting the evidence of record to reject the opinions of mental health providers at the Mental Health Cooperative ("MHC") and Centerstone. DE 14-1 at 16, 20. Plaintiff specifically claims that the ALJ "failed to note the definitions of [the] 'moderate' and 'marked' limitations" that she was assigned in a clinically related group form ("CRG") completed by Kelly Zachary on November 9, 2009. *Id*. at 19; AR 243-45. Plaintiff also cites SSR 06-03p[6] to support her assertion that the ALJ provided insufficient reasons for rejecting the assessment contained in this CRG. DE 14-1 at 18.

---

[6] SSR 06-03p has been rescinded effective March 27, 2017. Because Plaintiff's complaint was filed in June of 2013, however, the Court applies SSR 06-03p to the instant analysis.

Plaintiff's assertions are unavailing for numerous reasons. The most glaring error in Plaintiff's argument is her contention that the ALJ "simply did not provide the required 'good reasons' for discounting the treating source opinion, and a review of the decision shows that his analysis failed to comport with the requirements of SSR 06-[0]3p." DE 14-1 at 20. Plaintiff references her "treating providers at Centerstone" (*id.*), but she fails to identify any actual treating provider at Centerstone.[7] Her entire argument instead focuses on an initial assessment in the form of a clinically related group evaluation ("CRG"), which was completed by Kelly Zachary, an admissions coordinator at Mental Health Cooperative ("MHC"), on November 9, 2009. AR 243-45. However, Ms. Zachary does not represent an "acceptable medical source," a fact conceded by Plaintiff elsewhere in her brief, and Ms. Zachary's opinion is therefore not subject to the "treating physician rule" contained in 20 C.F.R. § 404.1527(c)(2), which requires that the ALJ provide "good reasons" for declining to give controlling weight to a treating provider's opinion. Even if Ms. Zachary did represent an "acceptable medical source" for purposes of 20 C.F.R. § 404.1527(c)(2), her sole interaction with Plaintiff consisted of an "intake assessment" on November 9, 2009 following Plaintiff's admission to MHC after reporting that she had experienced a suicidal ideation. AR 262. This falls well short of establishing a treating relationship that would be subject to the treating physician rule. *Cf. Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) ("[A] single visit does not constitute an ongoing treatment relationship."). Plaintiff's reliance on the treating physician rule is therefore meritless.

---

[7] The ALJ also refers to "Centerstone records" in the opinion (AR 29), although the records he references are identified as "medical records from The Estuary, Inc." AR 393-404. It is unclear to the undersigned whether "Centerstone" and "The Estuary" are in fact the same mental health organization. Regardless, Plaintiff fails to identify any treating provider from either "Centerstone" or "The Estuary."

Plaintiff's reliance on SSR 06-03p is similarly misguided. Plaintiff alleges that the ALJ violated SSR 06-03p by failing to "provide sufficient rationale for rejecting" the CRG. DE 14-1 at 18. To the contrary, the ALJ specifically discussed how the CRG was "situational" and based on a brief admission to MHC and not a treating relationship, which is precisely one of the factors that must be considered. *See* SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006) (requiring the Commissioner to consider the "treatment relationship between the individual and a treating source, including its length, nature, and extent as well as frequency of examination"). The ALJ also noted that Ms. Zachary was not an acceptable medical source, an additional factor for consideration under SSR 06-03p. *See id.* (requiring the ALJ to consider the "examining relationship between the individual and the 'acceptable medical source'").

The ALJ further noted that the Global Assessment of Functioning score ("GAF") of 45 contained in the CRG did not represent an assessment of Plaintiff's mental status, but was instead used to "track the clinical progress of an individual in global terms." AR 26 (citing DSM-IV). This is especially significant in the instant case as it appears that Plaintiff was discharged from MHC the day after she was admitted (AR 260), and did not show up for a scheduled follow-up appointment four days later. AR 266. Furthermore, as noted by Defendant, Plaintiff was assigned a GAF score of 61 by an acceptable medical source approximately two months later. AR 296, 300.[8] It was therefore not improper for the ALJ to accord "little weight" to the GAF score based on the brevity of the treatment at MHC, as well as the fact that the score was not assigned by an acceptable medical source. The Court also notes that even if the score had been assigned by an acceptable source, the Commissioner "has declined to endorse the [GAF]

---

[8] A GAF score of 61 "indicates only 'some mild symptoms.'" *Martin v. Comm'r, Soc. Sec. Admin.*, 61 F. App'x 191, 196 (6th Cir. 2003) (citing the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders*).

score for use in the Social Security and SSI disability programs[.]" *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (internal citations omitted); *see also Kornecky*, 167 F. App'x at 511 ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place.").

Plaintiff's additional argument regarding the ALJ's alleged failure to "note the definitions of [] 'moderate' and 'marked' limitations'" in the CRG is also unpersuasive. Plaintiff appears to argue that the ALJ committed reversible error by failing to explain in the opinion that the definitions of "moderate" and "marked" in the CRG are different from those "customarily used in Social Security disability evaluations." DE 14-1 at 20. It is not the ALJ's responsibility, however, to explain this distinction; the ALJ's duty instead involves weighing the evidence, making independent findings of fact, and determining whether a claimant is entitled to benefits under the Act. *Blair v. Comm'r of Soc. Sec.*, No. 98-3581, 1999 WL 196497, *2 (6th Cir. March 26, 1999) (citing *Richardson v. Perales,* 402 U.S. 389, 399-400 (1971)). The ALJ fulfilled this duty by providing a detailed discussion of Plaintiff's admission to MHC and analysis of the GAF score contained in the CRG. AR 25-27. He specifically discussed the numeric rankings included in the CRG, and explained how the evidence of record did not support the GAF score assigned by Ms. Zachary.[9] There is no indication that the ALJ misinterpreted the "functional assessment" section of the CRG, as Plaintiff suggests.

---

[9] As discussed *supra*, the ALJ also correctly noted that Ms. Kelly did not represent an "acceptable medical source" (AR 26), thus rendering her opinion incapable of establishing the existence of an impairment under the very ruling Plaintiff cites in support of her argument. *See* SSR 06-03p, 2006 WL 2329939, *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose.")

Plaintiff finally contends that the ALJ's decision "cannot stand" because the ALJ "failed to even acknowledge that [Plaintiff] was diagnosed with Major Depressive Disorder[.]" DE 14-1 at 20. It escapes Plaintiff's attention that the ALJ in fact determined that her major depressive disorder represented a severe impairment. AR 19. This claim, too, is therefore erroneous. This assertion of error is accordingly rejected.

**3. Plaintiff's credibility.**

Plaintiff argues that the ALJ's reliance on MRI findings documenting Plaintiff's back condition to discredit her testimony is misrepresentation of the record. DE 14-1 at 21-22. Plaintiff additionally claims that the ALJ improperly discounted her credibility based on a mischaracterization of emergency room records that showed significant neck pain in September of 2009. *Id*. at 22. Plaintiff finally contends that the ALJ improperly "attempted to show, or at least imply, that Plaintiff pursued disability based on her financial needs more than her functional status." *Id*. at 23.

Plaintiff cites SSR 96-7p, which states in part that an ALJ's credibility determination must include "specific reasons" that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." 1996 WL 374186, *4 (July 2, 1996).[10] "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 248. However, the ALJ's credibility determination is "entitled to

_____

[10] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. However, because Plaintiff's complaint was filed in June of 2013, SSR 96-7p applies to the Court's analysis of this claim.

deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Plaintiff's contention that the ALJ improperly "minimize[d] the severity of Plaintiff's spinal impairments" by failing to include all of the findings from the February 2009 MRI (DE 14-1 at 22) is a red herring. The ALJ clearly identified and discussed all of the findings from the MRI in his opinion, including "moderate central and moderate to severe bilateral foraminal stenosis" at the T1-2 level. *See* AR 22, 379. The fact that the ALJ quoted some, but not all, of the findings from the MRI later in the opinion does not prove that the ALJ used insidious machinations to discredit Plaintiff's testimony.

Additionally, Plaintiff's argument ignores the crux of the ALJ's discussion, which emphasizes that Plaintiff received conservative care from her providers and presented with mild clinical symptoms throughout the course of her treatment with Dr. Meyer despite the MRI findings:

> Even though Dr. [Paul] McCombs reviewed these results and indicated they were positive for stenosis at T1-2, treatment only included some Celebrex and telephonic follow-up care. Additionally, the claimant did not respond to telephone messages. There is also no evidence that suggested the claimant required additional surgery, as she continually alluded to throughout the evidence. Even examinations by treating physician, Dr. Meyer were impressive only for their lack of clinical findings.

AR 29. Plaintiff fails to address any of these reasons in her brief, which leads the Court to the conclusion that Plaintiff has conceded the merits of the ALJ's analysis.

Plaintiff also claims that the ALJ "misrepresented" her emergency room visit in September of 2009 by stating that Plaintiff presented with "complaints of chronic neck pain, which [was] noted to be mild." AR 22. The Court emphasizes, however, the following excerpt from the note documenting this visit:

> No complaints of significant back pain. Denies symptoms of radicular numbness in lower extremities. No history to suggest radiating pain to legs. Nothing to suggest significant weakness of lower extremities. Nothing in history to suggest cervical spasm/torticollis. No history of upper extremity weakness or paralysis. *The patient presents with a history of mild neck pain.*

AR 281 (emphasis added). Plaintiff's discharge instructions included an assessment that her neck pain was "most likely caused by a strain of the muscles," which was described as "a very common injury." AR 284. It is unclear how the ALJ's description of mild neck pain represents a mischaracterization of the record. In fact, the ALJ's statements about the extent of Plaintiff's next pain during the September 2009 emergency room visit are entirely consistent with the record.

Plaintiff finally claims that the ALJ discounted her credibility by insinuating that she had pursued disability benefits due to financial needs and not "functional status." DE 14-1 at 23. It is true that the ALJ referenced notes in the record suggesting that Plaintiff's pain was not as severe as she alleged during her hearing, and that Plaintiff suffered from a "lack of employment due to reasons other than disability." AR 29-30. Indeed, Plaintiff indicated to a mental health provider in November of 2009, several months after her alleged onset date, that her back pain was "intermittent." AR 394. The provider also noted that physical therapy was "recommended repeatedly" to Plaintiff, but added that "there was nothing to suggest that [Plaintiff] had pursued this with her doctors." AR 394. The provider even opined that "[i]n general I do not believe [Plaintiff] was proactive about her health[.]" AR 394. The ALJ also noted that Plaintiff advised the provider in September of 2009, more than three months after her alleged onset, that she would prefer to find a new job that "match[ed] her pay grade." AR 395.

Plaintiff cites no statute, ruling, or opinion demonstrating that the ALJ's consideration of these records was inappropriate. Quite the opposite, it was the ALJ's duty to consider such

evidence. *See* 20 C.F.R. § 404.1529(c)(3) (stating that when evaluating the intensity and persistence of a claimant's symptoms, the Commissioner "will consider all of the evidence presented, including information about [the claimant's] prior work record[.]").

Plaintiff's argument fails to address the abundance of additional evidence cited by the ALJ in support of his credibility determination, including equivocal testimony regarding the termination of her job for stealing prescription medication, drug-seeking behavior,[11] filing an application for unemployment benefits,[12] and a lack of clinical findings suggesting any functional limitations. AR 29-30. The Sixth Circuit has stated that "[w]hen a credibility determination regarding a claimant's subjective complaint is at issue, we affirm if the ALJ's determination is 'reasonable and supported by substantial evidence.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (quoting *Rogers,* 486 F.3d at 249). The ALJ provided such substantial evidence in the instant case. The Court therefore finds no error in the credibility determination.

---

[11] On April 20, 2011, Dr. Meyer noted that Plaintiff "has filled the opioids at more than one pharmacy" and "has been filling the opioids prescriptions earlier than every 30 days ... She must use one pharmacy ... If she uses more than one pharmacy or tries to refill the opioids early I will stop prescribing them for her." AR 412. The ALJ properly relied on such evidence to discount Plaintiff's credibility. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:14-cv-628, 2015 WL 4611472, at *7 (W.D. Mich. July 31, 2015) ("With respect to plaintiff's drug seeking behavior, courts have held that such behavior can form a basis for rejecting a claimant's testimony regarding pain and limitations.") (internal citations omitted).

[12] *See Siler v. Astrue*, No. 11-391, 2012 WL 2603656, at *13 (E.D. Ky. July 5, 2012) ("When a claimant files for unemployment, [she] is stating that [she] is ready, willing and able to work ... Yet, when a claimant files for disability benefits, [she] is stating that he is unable to work ... Thus, it was reasonable for the ALJ to consider Plaintiff's inconsistent representations to the government in assessing [her] credibility.") (internal citations omitted).

## V. CONCLUSION

For all of these reasons, Plaintiff's motion for judgment on the administrative record (DE 14) is DENIED.  An appropriate Order will accompany this memorandum.


BARBARA D. HOLMES
United States Magistrate Judge